OPINION OF THE COURT
John Marmarellis, J.
This motion for summary judgment requires an interpretation of section 31-a of the Private Housing Finance Law, as amended by the Laws of 1981 (ch 245, § 1, eff June 15,1981) and applicable to all sales taking place after that date.
At the time of submission to Special Term, the issue was one of apparent first impression. In the interim, however, section 31-a was the subject of a small claims action in Kings County, Korman v Bayridge Air Rights (116 Misc 2d 237). However, for reasons that follow, this court is constrained to depart from the holding in that case.
The defendant herein, Amalgamated Warbasse Houses, Inc., is a Mitchell-Lama project, a co-operative subject to the Private Housing Finance Law. Plaintiff was a shareholder of the defendant corporation, and as a lessee, paid monthly maintenance charges; a portion of the charge was for the amortization of the first mortgage on the project. Plaintiff eventually sold his shares, and there is no dispute as to the amount he was entitled to receive therefor. In addition, there is no dispute as to the amount of the monthly maintenance payments that represented his pro *221 portionate share of the amortization of the project’s first mortgage. However, plaintiff was paid less than 100% of the amount of his maintenance charges that went toward the amortization, and this is the basis of the within action.
The resale price of co-operative apartments subject to the Private Housing Finance Law is governed in part by the provisions of section 31-a, as follows: “Notwithstanding any other provision of this article and subject to any regulation not inconsistent with this section which may be promulgated by the commissioner or. the supervising agency, as the case may be, the resale price of a tenant cooperator’s shares in a mutual company shall not exceed the consideration he paid for such shares plus a proportionate share of the actual aggregate amortization of the first mortgage on the project from the date of such tenant cooperator’s purchase of such shares to the date of resale; provided that such proportion shall be in the same ratio to such aggregate amortization as the number of shares held by the tenant cooperator bears to the total number of shares of issued and outstanding capital stock of the company.”
Plaintiff’s position is that section 31-a mandates that a shareholder/tenant is entitled to the return of 100% of that portion of his past maintenance payments which went to the amortization of the first mortgage. The defendant, on the other hand, contends that section 31-a provides only a ceiling — that the co-operative may not return more than the consideration paid for the shares, plus 100% of the tenant/shareholder’s share of the amortization of the first mortgage, but may return less.
While it is interesting to note that approximately one month after plaintiff sold his shares, the co-operative began returning 100% of the amortization payments to selling shareholders, this fact is not determinative of the issue before us. The defendant herein avers that it would be unwise, egregious and a misapplication of the law to compel all co-operatives to return the balances that would be due to shareholders that have received less than 100% of their share of the amortization payments.
Since this motion was submitted for the court’s consideration, the court has been barraged with affirmations, *222 memorandums and letters. Upon due consideration, the court finds that it must part with the interpretation set forth in Korman (116 Misc 2d 237, supra) and holds that the statute does not mandate that co-operatives must return 100% of the selling shareholder’s proportionate share of payments toward the amortization of the co-operative’s first mortgage.
It would have been a simple matter for the Legislature to have written section 31-a of the Private Housing Finance Law in terms that upon the sale of his shares the shareholder would be entitled to 100% of that portion of his monthly payments that went for the amortization of the first mortgage. However, instead of such a simple route, the Legislature chose to speak in terms of “a proportionate share of the actual aggregate amortization * * * provided that such proportion shall be in the same ratio to such aggregate amortization as the number of shares held by the tenant cooperator bears to the total number of shares of issued and outstanding capital stock of the company.”
In the opinion of this court, the law permits the cooperative to return the total amount of amortization, one half the amount, or any amount —> so long as the proportion is determined by the ratio of the shareholder’s shares to the number of shares of outstanding stock.
Plaintiff would have the law provide a twofold purpose: first, to provide a ceiling on the resale price of the shares and second, to require that the co-operative return all of the shareholder’s portion of the amortization of the first mortgage. While this court, as did the court in Korman {supra), agrees with the former premise, it must disagree with the latter.
It must be emphasized that the resale price of a Mitchell-Lama apartment is governed not only by section 31-a, but by “any regulation not inconsistent with this section which may be promulgated by the commissioner or the supervising agency” (Private Housing Finance Law, § 31-a). If the commission were to rule that a co-operative must return 100% of the amortization payments, then section 31-a would make it binding. However, no such regulation is before this court.
*223 It appears from the within affidavits that the payments received by the plaintiff were in accordance with the law as set forth and interpreted herein. Accordingly, defendant’s motion for summary judgment is granted and the complaint dismissed.